UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **James T. Foley,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Civil Action No. 09-11280-DJC |
| ) | |
| **Yacht Management Group, Inc., Samir Jaber,** ) | |
| **Yale Turner and Donna Turner,** ) | |
| ) | |
| **Defendants.** ) | |

**MEMORANDUM AND ORDER**

**CASPER, J.**                                                                                              September 9, 2011

**I.     Introduction**

Plaintiff James T. Foley ("Foley") brings this action against Defendants Yale and Donna Turner ("the Turners"), Samir Jaber ("Jaber") and Yacht Management Group, Inc. ("Yacht Management") (collectively, "Defendants") alleging breach of contract, unjust enrichment and seeking specific performance with respect to the Defendants' failure to complete the sale of a boat auctioned on eBay for which Foley submitted the highest bid.  Foley has now moved for summary judgment on the breach of contract and unjust enrichment claims and the Turners have cross-moved for summary judgment.  For the reasons set forth below, both motions for summary judgment are DENIED.

**II.    Burden of Proof and Standard of Review**

Summary judgment is appropriate where there is no genuine dispute as to any material fact and the undisputed facts show that the moving party is entitled to judgment as a matter of law.  Fed.

R. Civ. P. 56; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The moving party bears the burden of showing the district court the basis for its motion and identifying where there exists a lack of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A dispute is "genuine" only if a reasonable jury could find for the nonmoving party. Anderson, 477 U.S. at 248. In considering a motion for summary judgment, the Court must "view the record in the light most favorable to the nonmovant, drawing reasonable inferences in his favor." Noonan v. Staples, Inc., 556 F.3d 20, 25 (1st Cir. 2009). "Failure of the nonmoving party to match the length and quality of the moving party's papers does not automatically relieve the court of its statutory task of determining whether the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." Stephanischen v. Merchants Despatch Transp. Corp., 722 F.2d 922, 930 (1st Cir. 1993) (internal quotation marks and citation omitted).

## III.   Factual Background

On July 14, 2008, Foley traveled to Boston to meet with Mr. Turner to view and inspect a 55' Hatteras Convertible boat named, "Material Girls" ("the Boat"), that the Turners had for sale. (Pl. Memo at 6, Ex. 1 (Foley affidavit ("Foley Aff.") ¶ 3); Pl. Statement of Material Facts ("Pl. Statement of Facts") ¶ 6).[1] Although Foley was interested in purchasing the boat, no negotiation

---

[1] For the purposes of the Memorandum and Order, the parties' filings shall be abbreviated as follows: The Turners' answer to the complaint ("Def. Ans. to Compl."); Foley's motion for summary judgment ("Pl. Mot."); Foley's memorandum of law in support of his motion for summary judgment ("Pl. Memo"); Foley's statement of material facts ("Pl. Statement of Facts"); the Turners' opposition to Foley's motion for summary judgment ("Def. Opp."); Foley's reply to the Turner's opposition ("Pl. Reply"); Foley's supplemental memorandum in support of his motion for summary judgment ("Pl. Supp. Memo"); the Turners' sur-reply to Foley's supplemental memorandum in support of his motion for summary judgment ("Def. Sur-reply"); and transcript of motion hearing held on May 11, 2011 ("Tr.").

regarding the sale of the boat took place and the parties made no deal regarding the boat. (Pl. Memo at 6; Foley Aff. ¶¶ 2-7). During Foley's visit to Boston, Foley and Mr. Turner discussed that Foley resided in Chicago and Foley intended to move the Boat to Lake Michigan in Chicago. (Foley Aff. ¶¶ 3-6).

Approximately five months later, on November 13, 2008, Mr. Turner called Foley to tell him that the Boat was listed for sale on eBay and invited him to bid on the Boat. (Pl. Statement of Facts ¶ 10). The Boat was listed for sale on eBay as a "Reserve" auction (i.e., if the highest bid did not meet the figure set by the seller, the boat would not be sold) which would end on November 21, 2008. (Pl. Statement of Facts ¶ 11). Although Foley was the highest bidder, he did not meet the "reserve" price and as a result, no sale occurred. (Pl. Statement of Facts ¶ 11). On November 21, 2008, the Boat was again listed on eBay with an opening bid of $100,000.00 as a "No Reserve Auction" but the seller ended the auction the very next day due to "an error in the listing." (Pl. Statement of Facts ¶ 12). On November 23, 2008, the Boat was listed for the third time on eBay as a "Reserve" auction, but when the auction ended four days later, the reserve price was not met and thus, the Boat was not sold. (Pl. Statement of Facts ¶ 13).

Eight days later, on November 29, 2008, the Boat was listed for the fourth time on eBay as a "No Reserve" auction with an opening bid of $100,000.00. (Pl. Statement of Facts ¶ 14). Foley was the highest bidder with a bid of $135,100.00 until the auction closed on December 4, 2008. (Pl. Statement of Facts ¶ 15). On that day, Foley received an email announcing that he was the winner of the auction. (Pl. Statement of Facts ¶ 16). Because the terms of sale of the Boat required Foley to send the seller a $2,000.00 deposit within 24 hours of the close of the bidding on the Boat, Foley sent this amount to Defendants Yacht Management, Jaber and the Turners within the required time

frame. (Pl. Statement of Facts ¶ 17). Defendants subsequently returned this deposit to Foley. (Tr. 22: 12-16).

On December 4, 2008, Foley attempted to contact Defendants attempting to complete the sale of the Boat, including faxing and mailing a letter to Defendants on December 6, 2008. (Pl. Statement of Facts ¶ 18). Neither Yacht Management nor Jaber responded to Foley. (Pl. Statement of Facts ¶ 18). Mr. Turner spoke to Foley, but Mr. Turner refused to complete the sale of the Boat. (Pl. Statement of Facts ¶ 18). On December 18, 2008, fourteen days after the close of the eBay auction in which Foley was announced the highest bidder, the Turners sold the Boat for $212,500.00 to another purchaser. (Pl. Statement of Facts ¶¶ 8-9).

## IV.   Procedural History

On July 30, 2009, Foley filed a complaint against the Turners, Jaber and Yacht Management alleging breach of contract (Count I), unjust enrichment (Count III) and requesting specific performance (Count II). (D. 1). On February 9, 2010, Foley moved for default judgment against Jaber and Yacht Management. (D. 12). Shortly thereafter, the Court (O'Toole, J.) issued a notice of default. (D. 13). After the Turners moved to dismiss the complaint on October 10, 2010, (D. 26), Foley moved for summary judgment on Counts I and III. (D. 29).[2] In November 2010, Foley filed an amended motion for default judgment against Jaber and Yacht Management. (D. 32-34). After having been transferred to this session, the Court heard oral argument on May 11, 2011 on all motions and denied the Turners' motion to dismiss. The Court ordered Foley to submit additional documentation of the eBay listing and a supplemental brief in support of his motion for summary judgment. After Foley did so, (D. 50), the Turners cross-moved for summary judgment in their sur-

---

[2]Foley has not moved for summary judgment on specific performance (Count II).

reply. (D. 51). The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332.

**A.     Discovery**

The Court highlights the discovery process in this case. As discovery was underway, on April 13, 2010, Foley moved to compel the Turners' proper responses to his request for production of documents and interrogatories. (D. 17). Two days later, Foley filed a motion to deem admitted all of his requests for admissions, citing the Turners' deficient responses and their failure to comply with the Federal Rules of Civil Procedure. (D. 18). In June 2010, the Turners moved for an extension of time to complete discovery, stating that Mr. Turner "instructed" his attorney to "respond to Plaintiff's Interrogatories, Request for Production of Documents and Requests for Admissions in a manner calculated to provoke the Plaintiff to file Motions to Compel (Discovery) with this Court." (D. 19). The motion also noted that while the Turners' attorney "has attempted to work with his clients in crafting proper answers to [Foley's] discovery requests, Defendant Turner has been unwilling to comply with even his own attorney's admonishments to follow the Federal Rules of Civil Procedure in reference to properly answering this discovery." (D. 19).

On July 13, 2010, the Court (O'Toole, J.) granted Foley's motion to deem admitted all of his requests for admission as well as his motion to compel proper responses to discovery requests and ordered that such responses be provided to Foley within twenty-eight days. (7/13/10 D. Entry).[3] The Court also ordered the Turners' depositions to occur by September 13, 2010. (7/13/10 D. Entry). Approximately one week later, Foley moved pursuant to Federal Rule of Civil Procedure 37 and Local Rule 37.1 for sanctions, attorneys' fees and costs in connection with the Turners'

---

[3]The Court has considered such admissions for the purposes of deciding Foley's motion for summary judgment.
5

failure to appear at their properly noticed depositions on June 10, 2010 in Massachusetts, failure to respond adequately to discovery requests and the Turners' instruction to their attorney to respond to the discovery requests in a manner that would provoke Foley move to compel responses, as noted in the Turners' prior motion for an extension of time to complete discovery. (D. 24). The Court granted in part Foley's motion and in ruling that sanctions were appropriate, awarded Foley the costs associated with the Turners' depositions only.   (D. 25).

## V.  Discussion

### A.  Defendants' Failure to Comply with Local Rule 56.1

When filing for summary judgment, both parties must comply with the requirements of Local Rule 56 and file a statement of material facts "with page references to affidavits, depositions and other documentation." Local Rule 56.1. A party opposing the motion must include a "concise statement of material facts of record as to which it is contended that there exists a genuine issue to be tried, with page references to affidavits, depositions and other documentation." Id. If an opposing party fails to dispute the material facts set forth in the statement served by the moving party, those material facts "will be deemed for purposes of the motion to be admitted by the opposing part[y]." Id.

Here, Foley submitted a statement of material facts and attached relevant exhibits to his memorandum of law in support of his summary judgment motion. (D. 30, 31). The Turners subsequently filed their opposition (D. 38), but failed to respond to Foley's statement of material facts as required by Local Rule 56.1. When asked at the May 11, 2011 hearing whether the Court should construe Defendants' opposition to Foley's motion as a cross-motion for summary judgment, Defendants indicated that the Court not do so. Nearly three months after the hearing, the Turners

cross-moved for summary judgment in their sur-reply to Foley's supplemental brief. (D. 51). Again, the Turners failed to comply with Local Rule 56.1; this time, by not submitting a statement of material facts of their own.

The First Circuit has explained that when parties ignore the Local Rules, they do so at their own peril. See Caban Hernandez v. Philip Morris USA, Inc., 486 F.3d 1, 7 (1st Cir. 2007). These rules "are meant to ease the district court's operose task and to prevent parties from unfairly shifting the burdens of litigation to the court." Id. at 8. Due to the Turners' failure to respond to Foley's statement of material facts and to submit their own motion for summary judgment that complies with the Local Rules in this district, the Court denies the Turners' cross-motion for summary judgment. Since the Turners have not responded to Foley's statement of material facts and have therefore not disputed the facts set forth in the statement, for the purposes of this motion, those material facts will be deemed admitted by the Turners. Local Rule 56.1; see Caban Hernandez, 486 F.3d at 7 (noting that when "a party opposing summary judgment fails to act in accordance with the rigors that such a rule imposes, a district court is free, in the exercise of its sound discretion, to accept the moving party's facts as stated").

The Court notes its frustration in having to decide a motion for summary judgment "without the assistance the court should expect from counsel," Stephanischen, 722 F.2d at 927, where neither party has provided this Court with relevant case law to either support or challenge the breach of contract claim, in particular, alleged in this case and where the Turners have neither filed summary judgment papers that comply with the Local Rules nor produced any evidence in support thereof, with the exception of one document not previously produced to Foley. The Court does not take lightly Turners' refusal to properly participate in the discovery process as required by the Federal

Rules of Civil Procedure, for which sanctions have already been imposed. (D. 25). In violation of the Court's July 13, 2010 order, the Turners have failed to adequately respond to Foley's discovery requests (including answering Foley's interrogatories), produce a single document to Foley related to his claims or certify that they have none to produce and have refused to be deposed (a deposition ordered by the Court to occur by September 13, 2010). (Pl. Memo at 14-15; Pl. Statement of Facts ¶¶ 21-24). The Turners concede that they are in violation of the Court's July 13, 2010 order. (Pl. Statement of Facts ¶ 24).

### B. Foley's Motion for Summary Judgment

#### 1. Count I: Breach of Contract

Under Massachusetts law, a plaintiff alleging a breach of contract claim must show "(1) that the parties reached a valid and binding agreement . . . (2) that [defendant] breached the terms of [that agreement] . . . and (3) that [plaintiff] suffered damages as a result [of] the breach." Coll v. PB Diagnostic Sys., Inc., 50 F.3d 1115, 1122 (1st Cir. 1995). The essential elements of a contract are an offer, acceptance and an exchange of consideration or a meeting of the minds. Vadnais v. NSK Steering Sys. Am., Inc., 675 F. Supp. 2d 205, 207 (D. Mass. 2009) (citing cases).

Foley argues that listing the boat for sale on eBay as a "no reserve" auction should be construed as an enforceable offer. A party makes an offer when it manifests a "willingness to enter into a bargain so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." Bourque v. FDIC, 42 F.3d 704, 708 (1st Cir. 1994) (quoting RESTATEMENT (SECOND) OF CONTRACTS § 24, at 71 (1981)). In the context where a party seeks to sell an item by inviting bids on that item, a seller's "requests for bids, even if they indicate proposed terms, are considered to be nothing more than nonbinding invitations for offers." Chase Theatres,

Inc. v. Paramount Pictures Corp., 25 Mass. App. Ct. 474, 478 (1988) (citing Weinstein v. Green, 347 Mass. 580, 582 (1964)). "Generally, only if an invitation for bids specifically states that an auction is 'positive' or 'without reserve' and the terms of the sale are included in the invitation, is the seller bound to accept the highest offer." Mangano v. Town of Wilmington, 51 Mass. App. Ct. 857, 861 n. 3 (2001) (citing cases); Hunt v. Rice, 25 Mass. App. Ct. 622, 627 (1988) (noting that "[i]t is possible to conduct an auction sale 'without reserve,' i.e., to declare that the property up for sale shall go to the highest bidder").

Here, the Turners admit the boat was listed for sale on eBay as a "no reserve" auction, (Def. Ans. to Compl. ¶ 15) and invited potential purchasers to bid on the boat. Thus, requesting bids on eBay to sell the boat as a "no reserve" auction would appear to constitute an offer. However, the Turners claim that they did not intend for the boat to be listed on eBay as a "no reserve" auction and that their agent at the time, Defendant Samir Jaber, made a "mistake" when listing the boat for sale as a "no reserve" auction instead of a reserve auction. The Turners point to the three previous occasions the boat was listed for sale on eBay to show they did not authorize Jaber to list the Boat for sale as a "no reserve" auction. In two out of those three instances, the boat was listed for sale as a "reserve auction." (Pl. Statement of Material Facts ¶¶ 11, 13). In the remaining instance, the boat was listed as a "no reserve" auction but the listing "ended . . . early because of an error in the listing." (Pl. Statement of Material Facts ¶ 12). The Turners argue that Jaber and Yacht Management had no actual or apparent authority, as their agents, to sell the boat on eBay as a "no reserve" auction.

While accepting that the Turners have admitted that Jaber and Yacht Management were acting "as their agent[s]" (Pl. Statement of Facts ¶¶ 19, 20), a principal is liable "for the agent's acts

toward third parties only if the agent was acting with the actual or apparent authority of the principal in that transaction." Theos & Sons, Inc. v. Mack Trucks, Inc., 431 Mass. 736, 743 (citing RESTATEMENT (SECOND) OF AGENCY §§ 7, 8 (1958)).[4]  Thus, the Turners may be bound by the eBay sale at issue if Jaber and Yacht Management had actual or apparent authority to list the boat as a "no reserve" auction on behalf of the Turners.  To establish the existence of actual or apparent authority, Foley must present evidence showing that the Turners "explicitly or impliedly manifestly agreed or consented' to Jaber selling the boat on eBay through a "no reserve" auction.  Normandin v. Eastland Partners, Inc., 68 Mass. App. Ct. 377, 385 (2007).  Foley argues that Jaber and Yacht Management were acting with actual and apparent authority when they listed the boat for sale as a "no reserve" auction. (Pl. Memo at 19).  In support of his argument, Foley points to an email and telephone call from Mr. Turner inviting Foley to bid on the boat when it was listed as a "reserve" auction in early November to demonstrate that Mr. Turner was aware that Jaber were selling Mr. Turner's boat on eBay.  (Pl. Memo at 19, Ex. 5; Pl. Statement of Facts ¶ 10).  Foley has presented no other evidence identifying any words or conduct by the Turners to suggest their agents had actual or apparent authority to sell the boat as a "no reserve" auction.  The Turners present no evidence concerning their communications with Defendant Jaber to show that they did not authorize the listing of the boat on eBay as a "no reserve" auction or any other evidence with respect to their relationship with Jaber; they merely state that they did not authorize Jaber to sell the Boat through a "no reserve" auction. (Def. Ans. to Compl. ¶ 15).  In deciding a motion for summary judgment, the Court is not to make "credibility determinations, weigh the evidence, or draw legitimate

---

[4]"Whether apparent authority exists is [typically] a question of fact, and, hence, not easily amenable to summary disposition." Zamoyski v. Fifty-Six Hope Road Music Ltd., Inc., 718 F. Supp. 2d 128, 140 (D. Mass. 2010) (internal citations omitted).

inferences from the facts," because those "are jury functions, not those of a judge." Anderson, 477 U.S. at 255. Thus, whether Jaber (and Yacht Management) had actual or apparent authority to act on the Turner's behalf in listing the boat on eBay as a "no reserve" auction based on the email and telephone call of Mr. Foley is a question of fact that cannot be resolved on this record at this juncture.

Because Foley's breach of contract claim is directly intertwined with whether Jaber and Yacht Management had apparent or actual authority to sell the boat as a "no reserve" auction and relatedly, whether the Turners had manifested a willingness that this occur, this matter precludes summary judgment on that claim.

Foley contends that a legally binding contract is formed once a seller posts an item on eBay and the highest bidder of that item is revealed when the bidding time period expires. Instead of offering legal authority for this proposition, Foley relies on the eBay user agreement (the "agreement") allegedly in effect at the time of the eBay auction at issue to support his argument that being the winning bidder of the boat amounted to a legally binding contract. (Pl. Supp. Memo at 4-5, Ex. 8). Foley highlights the agreement's provisions which state that "[b]efore you become a member of eBay, you must read and accept all of the terms and conditions in, and linked to, this User Agreement" and that "[w]hile using eBay, you will not use our sites or services if you are not able to form legally binding contracts . . . or fail to deliver items purchased from you, unless the buyer fails to meet the posted terms . . . ." (Pl. Supp. Memo at 4-5, Ex. 8). Foley argues that the Turners accepted such terms and conditions and that by listing the Boat on eBay, they "consented to the formulation of a legally binding contract" and they breached that contract when they failed to deliver the Boat to him. (Pl. Supp. Memo 5). Even assuming that the Turners accepted to be

bound by the agreement Foley cites as controlling, Foley misreads the agreement. The agreement does not state that a legally binding contract is actually formed once a member posts an item on eBay and there is a winning bidder for that item; the agreement simply requires members to be "able to form" legally binding contracts if they use the website and its services. Thus, Foley cannot rely on the agreement as a legal basis for showing that a contract formed between Foley and the Turners.

Accordingly, the Court denies Foley's motion for summary judgment as to his breach of contract claim.

### 2. Statute of Frauds

The Turners contend that assuming a contract existed, the statute of frauds bars Foley's breach of contract claim. When a defendant pleads the statute of frauds as a defense, the burden shifts to the plaintiff to prove compliance or to prove that the contract in question does not fit within its ambit. Beaver v. Raytheon Mfg. Co., 299 Mass. 218, 219 (1938). Under Massachusetts law, "a contract for the sale of goods for the price of five hundred dollars or more is not enforceable . . . unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker." Mass. Gen. Laws ch. 106, § 2-201. Here, Foley does not dispute that the contract Foley claims was created falls within the ambit of the statute of frauds since his winning bid of $135,100.00 exceeds the requisite amount of five hundred dollars.

The relevant question is whether Foley has produced a writing sufficient to satisfy the statute of frauds. Massachusetts' courts have explained that a writing must: (1) reasonably identifies the subject matter of the contract; (2) indicates that a contract with respect thereto has been made

between the parties, (3) state with reasonable certainty the essential terms of the unperformed promises in the contract, and (4) be signed by or on behalf of the party to be charged. Des Brisay v. Foss, 264 Mass. 102, 109 (1928); In re Bartlett, 367 B.R. 21, 32 (Bankr. D. Mass. 2007). Whether a writing satisfies these requirements is a question of law for the Court. Simon v. Simon, 35 Mass. App. Ct. 705, 709 (1994). Multiple documents, only one of which need be signed, may be read together as satisfying the Statute of Frauds. Blackstone Realty LLC v. FDIC, 244 F.3d 193, 198 n. 4 (1st Cir. 2001) (offer letter evidencing sales agreement combined with auction brochure listing the properties satisfied statute of frauds); In re Bartlett, 367 B.R. at 32 (cover letter and signed credit application, taken together, evidence the parties' intention to agree on certain terms). "The Court should always be satisfied with some note or memorandum that is adequate, when considered with the admitted facts, the surrounding circumstances, and all explanatory and corroborative and rebutting evidence, to convince the court that there is no serious possibility of consummating a fraud by enforcement." In re Rolfe, 710 F.2d 1, 3 (1st Cir. 1983) (quoting 2 A. CORBIN, CORBIN ON CONTRACTS § 498 (1950)).

Considering the limited record before the Court, the Court is not able to determine at this time whether a "writing" exists to satisfy the statute of frauds. Foley's argument that the eBay listing, alone, amounts to a sufficient writing is of little help since he has been unable to produce the full eBay listing at issue. Contrary to the Turners' argument, such failure does not on its own bar Foley's breach of contract claim since it is possible that another writing may be sufficient to satisfy the statute of frauds. Foley relies exclusively on a partial listing and other eBay listings of the boat for sale. He does not assert that the listings themselves are signed by the Defendants and as a result, they would not comply with the statute of frauds since the writing must be signed by the parties to

be charged. In addition, Foley's summary judgment papers fail to address what other writings or combination thereof, signed by the Turners or their agents, Defendants Jaber and Yacht Management, may amount to a "writing" to satisfy the statute of frauds.

### B. Count III: Unjust Enrichment

Foley argues that the Turners were unjustly enriched in the amount of $77,400.00 by selling the Boat after they breached their contract with Foley. Such amount represents the difference between the price of Foley's bid ($135,100.00) and the price at which the Turners later sold the Boat ($212,500.00).

To recover on a claim for unjust enrichment in Massachusetts, a plaintiff must show that "(1) the [defendant] knowingly received a benefit; (2) at [the plaintiff's] expense (3) under circumstances that would make retention of that benefit unjust." Frappier v. Countrywide Home Loans, Inc., 645 F.3d 51, 58 (1st Cir. 2011). In other words, "[u]nder the doctrine of unjust enrichment, a plaintiff seeks restitution of a benefit conferred on another whose retention of the benefit at plaintiff's expense would be unconscionable." In re Lupron Mktg. & Sales Practices Litig., 295 F. Supp. 2d 148, 182 (D. Mass. 2003). A contractual relationship need not be present to recover for unjust enrichment. Greenwald v. Chase Manhattan Mortgage Corp., 241 F.3d 76, 78 n. 1 (1st Cir. 2001). It "is an equitable remedy, and 'it is a basic doctrine of equity jurisprudence that courts of equity should not act . . . when the moving party has an adequate remedy at law.'" Massachusetts v. Mylan Laboratories, 357 F. Supp. 2d 314, 324 (D. Mass. 2005) (quoting Mort v. United States, 86 F.3d 890, 892 (9th Cir. 1996) (further citations omitted)).

Here, Foley has an adequate remedy at law, namely, damages. The damages Foley seeks with respect to his breach of contract claim may compensate him for any financial loss he alleges

he has incurred. (Compl. ¶ 21).  Foley has also failed to show that the Turners received $77,400.00 at his expense and that, as a result,  the Turners have been unjustly enriched.   The $2000 deposit Foley sent to the Turners upon being announced the winning bidder of the eBay auction was immediately returned to him.  Foley has made no payments to the Turners which they have retained and for which he seeks restitution.  Accordingly, the Foley is not entitled to summary judgment with respect to Count III.

## VI.     Conclusion

For the foregoing reasons, the Turners' motion for summary judgment is DENIED.  Foley's motion for summary judgment is also DENIED, but the portion of Foley's motion relating to the breach of contract claim is denied without prejudice.

**So ordered.**

/s/ Denise J. Casper  
United States District Judge